<pre>
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF MISSOURI
 2                        WESTERN DIVISION

 3
     UNITED STATES OF AMERICA,     )  Case No. 4:16-CR-182-DGK-1
 4                                  )
              Plaintiff,            )
 5                                  )
     VS.                            )
 6                                  )
     KEILON L. MADGE,               )
 7                                  )  January 22, 2019
              Defendant.            )  Kansas City, Missouri
 8

 9        ******************************************

10                  TRANSCRIPT OF SENTENCING
                        BEFORE GREG KAYS
11                 UNITED STATES DISTRICT JUDGE

12        ******************************************

13

14   APPEARANCES:

15   For United States:        Stefan Hughes
                               U.S. Attorney's Office
16                             400 East Ninth Street
                               Suite 5510
17                             Kansas City, Missouri  64106

18   For Defendant:            Sean W. Pickett
     [Defendant present.]      Sean W. Pickett & Associates, LLC
19                             1118 McGee Street
                               Suite 200
20                             Kansas City, Missouri  64106

21                 Regina A. Lambrecht, RDR, CRR
                       Official Court Reporter
22                 400 East 9th Street, Room 8652
                       Kansas City, MO  64106
23                         816.512.5623

24

     Proceedings recorded by mechanical stenography, transcript
25   produced by computer.
</pre>

1    (Begin proceedings in open court at 11:01 a.m.)

2         THE COURT:  This is Case 16-182-01, Mr. Keilon L.

3    Madge.  Welcome, Mr. Madge.

4         Mr. Madge appears with his attorney, Mr. Sean

5    Pickett.

6         MR. PICKETT:  Yes, Judge.

7         THE COURT:  You all -- you don't have to stand.  I'm

8    going to be long winded here.  Thank you all.  Mr. Pickett

9    appears with his client, Mr. Madge, today.  Also appearing

10   today is Assistant United States Attorney, Mr. Stefan Hughes,

11   and United States Probation Officer, Ms. Penny Hodges.

12   Welcome to everyone.

13        This case is called today for a sentencing hearing.

14   I note that Mr. Madge appeared in this court on November 22nd,

15   2017, and entered a plea of guilty to Count 2 of a three-count

16   indictment.  Count 2 was -- he was charged with distribution

17   of more than 28 grams of cocaine.  Upon his plea of guilty

18   this Court ordered a presentence investigation to be

19   completed.  That has been accomplished, and the Court has

20   reviewed that.

21        Mr. Madge, sir, my first responsibility is to

22   accurately calculate the guidelines, and I do so with the help

23   and expertise of Mr. Pickett, of Mr. Hughes, and Ms. Hodges.

24   So at this time we'll endeavor to do that.

25        I note, Mr. Pickett, you've advanced a number of

1    objections.  Would you like to say anything in support of

2    those objections?

3            MR. PICKETT:  Judge, given our plea agreement, and

4    our understanding of the criminal history at the time of

5    negotiating that plea agreement, we made some objections

6    pursuant to my conversations with Mr. Madge, as the Court

7    knows, going back and forth into custody, and explaining those

8    issues with him, making those objections timely so that

9    they're on the record.  Since then, Judge, there has been a

10   downward departure motion filed by the government.  In an

11   effort to protect those, should that cooperation not have been

12   deemed appropriate, those objections were made.  Mr. Madge

13   understands those objections.  We're, for purposes of

14   guideline arguments and he understands given where we're at

15   today, that those objections may not be -- may not be proper

16   at this time.  And therefore, he's waiving those objections

17   that he made in the PSI, Judge.

18           THE COURT:  Okay.  Mr. Hughes, did you agree with

19   any of those objections to begin with, I guess?

20           MR. HUGHES:  Judge, I don't believe I did.  I --

21   I --

22           THE COURT:  But notwithstanding your agreements.

23   Because I know there's an agreement part.  My -- my position

24   is I have to accurately calculate those -- those guidelines.

25   And I do so -- I don't always agree with the lawyers.

1  Sometimes there's negotiations that take place, but I believe

2  that those guidelines were calculated correctly.  I understand

3  Mr. Pickett has a job to do, an important job, and he advances

4  his objections.  He would not be successful on these

5  objections, the way I look at the guidelines, but I just was

6  curious if you had a position different than that.

7        MR. HUGHES:  I agree with the Court and probation

8  office.

9        THE COURT:  Okay.  Okay.  Very good.  So that's what

10  we'll -- that's how we'll proceed then.  I'm going to show

11  those objections were withdrawn at this time.

12        That gives us a total offense level of 31, a

13  criminal history category of VI, Mr. Madge, and always I

14  always tell people that's the criminal history category we get

15  to under the federal guideline system.  So you're a VI.  That

16  gives us a guideline range of 188 to 235 months.  Statutory

17  range is 5 to 40.  Supervised release range is four to five

18  years.  Fine range of 30,000 -- bless you -- to $5 million.

19        MS. HODGES:  Excuse me.

20        THE COURT:  Special assessment of $100.  Mr. Hughes,

21  sir, is it -- bless you.

22        MS. HODGES:  Excuse me.

23        THE COURT:  Is there a -- a restitution or money

24  judgment agreement in this case, sir?

25        MR. HUGHES:  No, Your Honor.

1          THE COURT:  Okay.  So at -- do you agree with those

2     calculations then, Mr. Hughes?

3          MR. HUGHES:  I do, Your Honor.

4          THE COURT:  Bless you.  Do you need a Kleenix?

5          MS. HODGES:  I have one.  Thank you, Your Honor.

6          THE COURT:  All right.

7          MS. HODGES:  Thank you.

8          THE COURT:  Mr. Pickett, sir, not -- based on the

9     objections that you've withdrawn, do you agree the Court's at

10    least calculated the guidelines at this time correctly, sir?

11         MR. PICKETT:  Yes, Judge.

12         THE COURT:  All right.  So Mr. Madge, sir, that is

13    our starting point.  That's how we begin this process.  I note

14    the government's filed a motion, document 43.  I've reviewed

15    that.  Mr. Hughes, what do you recommend we do in this case?

16         MR. HUGHES:  Judge, I always feel a little

17    uncomfortable, because ultimately you're the final arbiter on

18    what is going to be a fair and just sentence.

19         THE COURT:  Could the attorneys come forward for

20    just a second?  Just one moment.

21       (Bench conference on the record outside the hearing of

22         the gallery.)

23         THE COURT:  Someone just walked in the courtroom.  I

24    mean, I usually want to ask him questions about how meaningful

25    this was and have him kind of quantify the value of it, so it

1   gives me an idea.  Can we do that with some --

2          MR. PICKETT:  I think so.  I believe that's his

3   father.

4          THE COURT:  Okay.

5          MR. PICKETT:  Let me double-check, Judge.

6          THE COURT:  Okay.  Okay.

7          MR. PICKETT:  Sorry, Judge.

8          THE COURT:  Could you speak up just a little bit?

9          MR. PICKETT:  Judge, that is his father.  And he's

10  not comfortable letting his father know that he's cooperated

11  in this case.

12         THE COURT:  That he's what?

13         MR. HUGHES:  He's not comfortable letting his father

14  know that he cooperated.

15         THE COURT:  Okay.  How are we going to do this,

16  guys?

17         MR. HUGHES:  I'll do whatever you want me to do.

18         THE COURT:  Well, let's talk -- let's talk then

19  right now.  With your permission, I guess, Mr. Pickett,

20  because we're going to do this in front of your client.  Do

21  you -- I mean, based on this motion, I think you put -- you

22  quoted the officer saying that he stuck his neck out.

23         MR. HUGHES:  Yeah.  And he was -- he was emphatic on

24  that.  He came to my office and wanted to meet me

25  face-to-face.

1        THE COURT:  Yes, sir.

2        MR. HUGHES:  And he said that in ordinary kind of

3   homicide cases what he did was literally stuck his neck out,

4   because he didn't have a --

5        THE COURT:  They resolved the case too.

6        MR. HUGHES:  I think they did.

7        THE COURT:  Based on that.

8        MR. HUGHES:  Yeah.  But the detective was really

9   impressed with the fact that this guy came forward, because

10  ordinarily, and, you know, we have reason to believe he's a

11  gang member.  And, you know, the gang rules don't usually

12  allow for that, but he did that.  And like I said, the

13  detective was very impressed with him.  Came -- sought a

14  face-to-face with me to talk about that.

15       THE COURT:  Okay.  Okay.  That's what I need to

16  know.  That helps him a lot.  I mean, to be quite honest with

17  you, Mr. Pickett, this is a guy I'm probably above guidelines

18  on him, all things remaining equal, given this nasty, ugly

19  criminal history.  But this is going to help him, and -- and I

20  want him to know, and I know you'll communicate that with him,

21  that --

22       MR. PICKETT:  I will.

23       THE COURT:  -- this is normally above -- he's going

24  to die in prison type of case.  But he's going to get some

25  benefit out of this.  Okay?

1          MR. PICKETT:  Yes, sir.

2          THE COURT:  How much arguments do you guys want to

3    make?

4          MR. HUGHES:  I wasn't going to make any, Judge.

5          THE COURT:  Okay.  Just consider the file and things

6    filed.

7          MR. HUGHES:  Right.

8          MR. PICKETT:  My arguments are mostly under the

9    factors, Judge.  The biggest one is the pre-indictment, the

10   case was -- the facts were in 2011.

11         THE COURT:  Yes, sir.

12         MR. PICKETT:  He was indicted in 2016.  There was a

13   lot of things under the bridge, even though he got violated on

14   his supervised release.

15         THE COURT:  You know, it's pretty sad he's not

16   comfortable doing this in front of his own father, but that's

17   kind of illustrated here in this PSR, right?  And that's the

18   world we live in, unfortunately.

19         MR. PICKETT:  That's right, Judge.

20         THE COURT:  So I'm just going to pitch it to you

21   guys, and you guys say what you want to say, and then I'll

22   consider the factors, and I'll render his sentence.  Okay?

23         MR. PICKETT:  Thank you, Judge.

24         THE COURT:  Okay.  Thank you.

25      (End of bench conference.)

1          THE COURT:  All right.  Mr. Hughes, do you wish to

2     make a statement for the Court?  I've read your filings, I've

3     considered this file, and Mr. Madge's considerable criminal

4     history.  Do you wish to say anything else in support of this

5     case?

6          MR. HUGHES:  No, Your Honor.

7          THE COURT:  Very good.

8          Mr. Pickett, sir, do you wish to be heard?

9          MR. PICKETT:  Judge, yes, briefly if I could.

10          THE COURT:  Yes, sir.

11          MR. PICKETT:  Is it okay if I stand here?

12          THE COURT:  Wherever -- wherever you feel

13     comfortable, sir.  Just as long as we can hear.

14          MR. PICKETT:  Sometimes I'm a little soft spoken, so

15     I'll --

16          THE COURT:  Well, I haven't seen that today yet, Mr.

17     Pickett.  We look forward to hearing the soft spoken.

18          MR. PICKETT:  Sometimes that happens, Judge.  Judge,

19     I've known Mr. Madge and his family for some -- some time, a

20     little over 10 years.  And although I was not real familiar

21     with him, I was more with the rest of his family, some of his

22     brothers and those things.  Mr. Madge, in my dealings with

23     him, previously time or to my knowledge of him, led him here.

24     I didn't always represent him on anything serious, but those

25     things are in his criminal history, Judge.  And he stands here

1    under the guideline sentence that we currently have.

2         What I would like for the Court to consider are

3    those minimum -- the minimum sentence that the Court thinks

4    that this young man -- or actually he's not that young

5    anymore -- needs to be sentenced to in order for those

6    particular crimes that he's charged with, and his relevant

7    conduct, to effect the sentence the Court thinks is proper.

8         The factors I believe under 3553, Judge, that are

9    important in this case, that stands out different than most of

10   my clients, are that his actions in this case occurred in

11   2011.  They were hand to hands with police officers.  He was

12   not indicted on those, Judge, until 2016 in this case.

13   Previous to that point, Judge, he had stepped away from those

14   types of incidents, from his interaction with police.  And the

15   Court may have some information about other things that showed

16   that he had stepped away from those incidents, but was still

17   living in the neighborhood and still aware of what was going

18   on.  It's hard for him to step away.  It's hard for many of my

19   clients to step away given their backgrounds and given their

20   economics and given what they've done.  You've seen the

21   multiple children that he has and different things that he was

22   doing to try to provide.  Once he started to try to provide to

23   those children, Judge, and that occurred approximately 2012,

24   2013, that's when I became a lot more aware of Keilon Madge as

25   opposed to some other people in the family.

1      And he was coming to my office in efforts for jobs,

2  in efforts for different opportunities, and those types of

3  things because I had become counsel on some civil matters for

4  the family.  They had got into a trust situation with me, in

5  some ways, and that was the first thing I noticed about

6  Mr. Madge, Mr. Keilon Madge, was that he had stepped away from

7  some of the previous things that I was aware of, or

8  peripherally aware of, Judge.

9      He then became a person who was welcome to my office

10  and not a client at that point.  And so that is a

11  pre-indictment rehabilitation step that I don't always see,

12  Judge, in this particular instance.  There's no other way for

13  me to tell you that happened other than to just tell you like

14  I've told you.  So that was something that I saw and I was

15  impressed with to him up to the point that he got indicted.

16      He had heard that there might be an indictment

17  coming down.  He did not hide, he did not run.  He kept

18  working.  He kept in contact with my office.  I don't know how

19  he was aware that it might happen, but things -- you hear

20  things on the streets, and he was very sullen and very

21  questioning his choices at that time, not necessarily to

22  continue to be good, Judge.  Sometimes his -- he was

23  questioning his choices about how does he provide in the short

24  term, given what he knows.  And those things, Judge, he chose

25  not to do.  And may -- maybe because of my guidance, but maybe

1  not.  And I think he'd already pulled himself out of it.  So

2  that was something I was impressed with, Judge.  And I don't

3  know how else to say it.

4          He had -- has always struggled with use, with

5  narcotics.  He's in custody and not on bond now for some of

6  that reason, Judge.  And so we would ask that whatever

7  sentence you give him, to the extent that he's going to be

8  able to qualify, that you recommend.  There's the First Step

9  Act, has now given us some options.  I still do not fully

10  understand the Act, having it become -- it's brand new.  I

11  have read through it.  I have contemplated it for him.

12          THE COURT:  I don't think it -- he qualifies for any

13  relief under the First Step Act.  Do you, Mr. Hughes?

14          MR. HUGHES:  I don't want to say, Judge, because I'm

15  quite -- we're waiting for guidance from Washington.

16          THE COURT:  Okay.  A lot of this goes to second

17  consecutive sentences is the biggest part that I see.  But go

18  ahead.

19          MR. PICKETT:  Any relief on the classes that he

20  would be afforded --

21          THE COURT:  Sure.

22          MR. PICKETT:  -- afterwards, I believe he completely

23  qualifies for, lifetime wise.  Whether or not his sentences

24  and his label would disqualify him, I'm not clear yet on.

25          THE COURT:  Are you talking like RDAP program, is

1  that what you're talking about?

2      MR. PICKETT:  RDAP.  And under the First Step Act, I

3  read it, Judge, there's some other things that he can do class

4  wise within the Bureau that I think --

5      THE COURT:  Okay.  That was -- okay.  It's a big

6  act.  There's a lot in there.

7      MR. PICKETT:  Right.

8      THE COURT:  I got you.  I got you, Mr. Pickett.

9      MR. PICKETT:  And we're all just now learning a lot

10  about it.

11      THE COURT:  Yes, sir.

12      MR. PICKETT:  And so to the extent that the step --

13  First Step Act can help him in getting classes done while in

14  the Bureau, this is a person I think, Judge, that the -- that

15  is certainly to take advantage of those things there.  But I

16  don't want the Court to rely on those in the sentence.  Those

17  are things for him to take advantage of in the Bureau of

18  Prisons, given after sentence, getting some time off.

19      THE COURT:  Okay.

20      MR. PICKETT:  The way I read the First Step Act,

21  Judge.

22      THE COURT:  All right.  Very good.

23      MR. PICKETT:  The fact of his age, of course, it's

24  easier for somebody his age to not recidivate.  And perhaps

25  we've seen some of that in what I've already talked about.  He

1   has multiple people relying on him.  They understand that he

2   may be gone for some -- some time.  But the fact that he would

3   have the opportunity to get back out and be involved is

4   something that I think he would be a productive aspect of that

5   fatherhood for those younger children.  And what I've seen,

6   Judge.

7          He also has made, I think, two requests to the

8   Court, which I have not filed myself, for opportunity to

9   marry.  There is somebody who does want to marry him.  I

10  personally chose to not file that motion based on somebody

11  having a choice after he's sentenced, whether or not they

12  still want that.  And so that's a motion that may be filed

13  post haste, Judge.

14          THE COURT:  Yeah.  I'm probably not going to get in

15  that business.

16          MR. PICKETT:  Right.

17          THE COURT:  That's between him and the Bureau of

18  Prisons.  I try to stay out of that the best I can.

19          MR. PICKETT:  Just wanted the Court to know that

20  there's that support there.

21          THE COURT:  Yes, sir.

22          MR. PICKETT:  And people who know where he's at and

23  still see the love and the value of him, even though he's not

24  currently married at that point to that person.

25          THE COURT:  Yes, sir.

1        MR. PICKETT:  For all those reasons, Judge, although

2  he stands here with a minimum guideline sentence of 188

3  months, because of his history, this young man -- this man is

4  not a person that I see as -- as a typical career offender.

5  As he stands here with you now based on the things that he's

6  changed after already having sentences that affected him at

7  that point and the bad choice that led him here.  No matter

8  why he made it, what the economics were or what he was doing,

9  the aspects of that and everything he's done since then, we

10  want the Court to consider in the Court's recommended -- or

11  sentence.

12        THE COURT:  All right.  Thank you Mr. Pickett.

13        Mr. Madge, I think Mr. Pickett's done a good job for

14  you.  And you don't have to say anything, but if you wish to

15  speak, you have a right to speak.  We just ask that you stand

16  where you're at and speak in a clear voice if you wish to say

17  something.  If you don't, that's fine too.

18        THE DEFENDANT:  No, thank you.

19        THE COURT:  All right.  I'll show that Mr. Madge

20  chooses not to make a statement.

21        At this time, Mr. Madge, let me go through this

22  process with you.  And I see people in the audience.  Thank

23  you all for being here today to support Mr. Madge.  We know

24  these are difficult days for Mr. Madge and those who support

25  and care about him.

1       So, Mr. Madge, I've had a lot to think about and

2  consider in your case.  I think the government's been very

3  fair with you.  I think Mr. Pickett makes some great arguments

4  related to the timing of this case, and how old these are.

5  And -- and, you know, your problem, of course, is you've got a

6  lengthy criminal history.  That's -- that's kind of the

7  elephant in the room that you've -- you're a category VI

8  criminal history.

9       I've considered all of those factors.  Also the

10  factors under 18 U.S.C. 3553(a), which Mr. Pickett has

11  referenced.  Among the ones that are concerning are the need

12  to protect the public, the need for deterrence, the need to

13  avoid unwarranted sentence disparity among defendants with

14  similar records, because it's very -- it would be very easy

15  for you to be sentenced above guidelines here, given your

16  criminal history.  It looks like, Mr. Madge, you've taken all

17  the right steps and you haven't played games with us here

18  today during this process, and we respect that.  We appreciate

19  that.  So thank you for doing that, Mr. Madge.

20       So based on all of those factors, it is the Court's

21  -- it is the judgment and sentence of this Court that this

22  defendant, Mr. Keilon L. Madge, is hereby committed to the

23  custody of the Bureau of Prisons for 180 months on Count 2.

24  Upon release from imprisonment the defendant shall be placed

25  on supervised release for five years on Count 2.  Upon release

1    -- since the defendant does not have ability to pay a fine,

2    the fine is waived.  It is further ordered the defendant shall

3    pay to the United States a special assessment of $100, which

4    shall be due immediately.

5            While on supervised release the defendant shall

6    comply with the mandatory and standard conditions which have

7    been adopted by this Court.  In addition, the defendant shall

8    also comply with special conditions listed in the presentence

9    investigation report.

10           Mr. Madge, you have 14 days to appeal this decision.

11   You've waived your right to appeal in your plea agreement.

12           Mr. Hughes, what else do we need to talk about, sir?

13           MR. HUGHES:  I don't believe I know, but would you,

14   please, for the sake of -- I didn't hear --

15           THE COURT:  180 months.

16           MR. HUGHES:  One eight zero?

17           THE COURT:  One eight zero, yes, sir.

18           MR. HUGHES:  Yes, sir.

19           THE COURT:  You have some counts to dismiss too, I

20   believe, don't you?  He pled guilty to Count 2 of a

21   three-count complaint, I believe.

22           MR. HUGHES:  And I formally dismiss the remaining

23   two counts, Your Honor.

24           THE COURT:  All right.  All right.  Thank you.  Mr.

25   Pickett, what else do we need to talk about?  I know that was

1   one thing you were getting ready to take up here.

2           MR. PICKETT:  The dismissal --

3           THE COURT:  Oh, RDAP program.  I'll recommend him

4   for the RDAP program.  You know, Mr. Madge, this is just what

5   you make of it.  I'm sure you've been in and out of treatment

6   your career here.  This -- hopefully if you put your heart

7   into it, will be a meaningful opportunity for you to change

8   your life and -- and deal with this addiction issue which you

9   obviously suffer.

10          I'm sorry, Mr. Pickett, anything else?

11          MR. PICKETT:  No, Judge.  That is what I was wanting

12  to address.  And I didn't -- I didn't hear you correct, but I

13  did hear you correct, so --

14          THE COURT:  Okay.

15          MR. PICKETT:  -- that's all.

16          THE COURT:  Good luck to you.  Thank you.

17      (Proceedings concluded at 11:24 a.m.)

18                    C E R T I F I C A T E

19      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

20  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

21

22  /s/Regina A. Lambrecht              February 25, 2020
    REGINA A. LAMBRECHT, RDR, CRR       DATE
23  Official Court Reporter

24

25